UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 2:20-CR-00074-JRG |
| | ) | |
| vs. | ) | |
| | ) | |
| ROBERT MCCLURE, | ) | |
| | ) | |
| Defendant | ) | |

**REPORT AND RECOMMENDATION**

Before the Court is Defendant's Motion to Suppress Defendant's Statement [Doc. 261] seeking the suppression of any statements made by Defendant to law enforcement officers on September 14, 2020. The United States filed a Response in Opposition to Defendant's Motion [Doc. 282]. The Court then conducted an evidentiary hearing on the motion on December 15, 2021. Defendant and his counsel, Helen Nicole Himebaugh, Esq., along with Assistant United States Attorneys Meghan Lynn Gomez, Esq. and J. Christian Lampe, Esq. and Special Agent John Bulla of the Department of Homeland Security, testified at the hearing.

This matter is before the Court pursuant to 28 U.S.C. § 636(b) and the standing orders of the District Court for a Report and Recommendation. For the reasons stated herein, the undersigned **RECOMMENDS** that the Motion to Suppress [Doc. 261] be **DENIED**.

I.  **BACKGROUND**

On September 1, 2020, a federal grand jury returned an indictment against Defendant charging him with conspiracy to distribute fifty (50) grams or more of methamphetamine, its salts, isomers, and salts of its isomers, a Schedule II controlled substance in violation of 21 U.S.C. §§

846 and 841(a)(1), (b)(1)(A), money laundering, and purchase of property with the proceeds of unlawful activity in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i) and (h).[1] Defendant was subsequently arrested on September 11, 2021 and had an initial appearance before a United States Magistrate Judge on September 14, 2021.

Defendant first argues that the statement he provided to law enforcement on September 14, 2021 should be suppressed because the interview was conducted after an unnecessary delay between his arrest and his appearance before a magistrate judge, and with those conducting the interview having full knowledge that he was scheduled to appear before a magistrate judge that very afternoon. Defendant suggests that had he been advised of the nature of the charges against him and been appointed counsel before the interview he would not have made the incriminating statements that he now seeks to suppress. Defendant claims that the timing of the interview violated his Sixth Amendment rights. Additionally, Defendant argues that his statement was involuntary because at the time he was interviewed he was so distraught over his son's recent hospitalization and medical condition that he was unable to knowingly and voluntarily waive his *Miranda* rights. The Government responds that Defendant's Sixth Amendment rights had not been triggered at the time of the interview because the interview took place prior to any judicial proceedings. On the other hand, the Government acknowledges that Defendant's Fifth Amendment *Miranda* rights did apply at the time of the interview, but asserts that Defendant voluntarily, knowingly, and intelligently waived those rights.

---

[1] A superseding indictment was returned on December 14, 2021, after Defendant filed the Motion to Suppress, expanding the time frame of the alleged conspiracy to distribute methamphetamine and adding an additional charge of conspiracy to distribute 100 kg or more of marijuana. [Doc. 281]. The basis of Defendant's Motion to Suppress is unrelated to the superseding indictment so it is unnecessary to discuss the superseding indictment in this Report and Recommendation.

## II.   FINDINGS OF FACT

Special Agent John Bulla ("Agent Bulla") of the Department of Homeland Security, stationed in Johnson City, Tennessee, testified that after the return of the indictment against Defendant on September 1, 2020, he and other members of law enforcement began attempting to locate and arrest the individuals named in the indictment. Agent Bulla testified that he had a general idea of Defendant's location and shared that information with law enforcement in the area where Defendant was believed to be. An operation was then scheduled where agents would travel to that area, located approximately four to five hours from Agent Bulla's normal duty station, to attempt to take Defendant into custody. Shortly before the planned arrest operation, Agent Bulla received information from a Drug Enforcement Agency Task Force Officer that Defendant had been located at a hotel in Winchester, Tennessee. Agent Bulla stated that local law enforcement was instructed to arrest Defendant since they had a specific location for him, in the interest of public safety, as opposed to waiting until the date of the planned operation.

Defendant was taken into custody in Winchester, Tennessee on the afternoon of Friday, September 11, 2020, but Agent Bulla was several hours away in Johnson City, Tennessee at the time. Agent Bulla explained that it is routine for agents to attempt to interview individuals after their arrest. Agent Bulla said he was delayed in being able to do so in this instance because he had to obtain approval for travel before leaving and then travel several hours to Chattanooga. Agent Bulla arrived in the evening on Sunday, September 13, 2020 and went the following morning to the DEA's Chattanooga field office to interview Defendant. Defendant was transported to the DEA's office by the Franklin County Sheriff's Office from the Franklin County Detention Center, where he was being held pending his initial court appearance. Upon Defendant's arrival, he was taken to an interview room and advised of his *Miranda* rights. Agent Bulla testified that he read

Defendant his *Miranda* rights and provided a written *Miranda* rights waiver form for Defendant to review and sign. Agent Bulla stated that Defendant acknowledged understanding his rights and then voluntarily waived them, which Defendant further indicated by signing the waiver form.[2]

Agent Bulla testified that early in the interview Defendant stated his son had recently been released from the hospital but was going to be okay. He further testified that Defendant did not appear to be overly emotional or distraught and did not demonstrate any behavior indicating it would be difficult for him to understand his rights or go forward with the interview, nor did he ever say he was confused by Agent Bulla's questioning. Agent Bulla testified that he would have discontinued the interview immediately if Defendant had been overly emotional. Agent Bulla acknowledged that when the approximately hour-long interview commenced, he was aware Defendant was scheduled to appear for his arraignment before a United States Magistrate Judge later in the day. After the interview, Defendant was transported from the DEA office to the federal courthouse in Chattanooga by the Franklin County Sheriff's Department.

## III. ANALYSIS

### a. Sixth Amendment Right to Counsel

Once arrested, a defendant is to be taken before a magistrate judge for an initial appearance without unnecessary delay. Fed. R. Crim. P. 5(a)(1). The right to counsel guaranteed by the Sixth Amendment is triggered when a defendant appears before a judge for this initial appearance. *Rothergy v. Gillespie Cty., Texas*, 554 U.S. 191, 194 (2008) (citing *Brewer v. Williams*, 430 U.S. 387, 398-99 (1977); *Michigan v. Jackson*, 475 U.S. 625, 629, n. 3 (1986)). Statements made more than six hours after arrest and before presentment for an initial appearance may be subject to

---
[2] A Miranda rights waiver form bearing the signatures of Defendant, Agent Bulla, and DEA Trask Force Officer Travis Carrier was entered as the Government's Exhibit 1.

suppression if the delay in bringing defendant before a magistrate judge for an initial appearance was unnecessary. *Corley v. United States*, 556 U.S. 303, 322 (2009). A delay for the purpose of interrogation is unnecessary. *Id.* at 308. Delays due to the unavailability of judges and other court personnel necessary for conducting an initial appearance are reasonable and necessary and do not violate the requirements of Rule 5(a). *United States v. Garcia-Hernandez*, 569 F.3d 1100, 1106 (9th Cir. 2009). More specifically, a weekend delay due to the unavailability of a magistrate judge is not unreasonable. *United States v. Van Poyck*, 77 F.3d 285, 289 (9th Cir. 1996). Here, Defendant was arrested on a Friday afternoon and was brought before a magistrate judge the following Monday afternoon. This delay was due to the unavailability of a magistrate judge over the weekend and was not for the purpose of interrogation.[3] As such, this delay did not run afoul of the requirements set forth in Rule 5(a), nor was Defendant questioned in violation of his Sixth Amendment rights as these rights had not yet attached. *See Rothergy*, 554 U.S. at 194.[4]

    b. **Waiver of *Miranda* Rights**

A defendant may waive the rights conveyed in *Miranda* warnings so long as the waiver is made knowingly, voluntarily, and intelligently. *Moran v. Burbine*, 475 U.S. 412, 421 (1986). The inquiry to determine whether a waiver was valid consists of two distinct parts: 1) was the waiver voluntary in the sense that it was a deliberate choice rather than the result of intimidation, coercion,

---

[3] The Court notes that, although permissible under the law, the delay in questioning Defendant until hours before his scheduled initial appearance was less than ideal. Interviews conducted after this type of delay but shortly before a defendant's initial appearance could be grounds for suppression of a defendant's statement if the Court was presented with evidence of a pattern or practice by an agency or officer in attempting to ensure that a defendant was interviewed prior to his/her initial appearance; however, in this case law enforcement provided a reasonable explanation for the delay and it is clear the interrogation occurred as soon as practicable under the circumstances.

[4] Moreover, even if Defendant's Sixth Amendment rights had attached at the time of his questioning, Defendant waived those rights. *See Patterson v. Illinois*, 487 U.S. 285, 296 (1988) (holding that advice of *Miranda* rights is sufficient to inform a defendant of the nature of his Sixth Amendment rights and the consequences of abandoning them).

or deception; and 2) was the waiver made with full awareness of both the nature of the rights being waived and the consequences of waiver such that the decision was knowingly and intelligently made. *Colorado v. Spring*, 479 U.S. 564, 573-74 (1987) (citing *Moran*, 475 U.S. at 421). The Court must consider the totality of the circumstances surrounding the interrogation when determining whether a waiver was made voluntarily, knowingly, and intelligently. *Id.*; *Garner v. Mitchell*, 557 F.3d 257, 263 (6th Cir. 2009). Additionally, "[t]he underlying police-regulatory purpose of *Miranda* compels that these circumstances be examined, in their totality, primarily from the perspective of the police." *Garner*, 557 F.3d at 263. As explained by the Sixth Circuit, "[t]he knowledge of the police is vital. If they have no reason to think that the suspect doesn't understand them, there is nothing that smacks of abusive behavior." *Id.* at 262 (quoting *Rice v. Cooper*, 148 F.3d 747, 750-51 (7th Cir. 1998)) (internal citations omitted).

Defendant argues that he was under duress and distraught due to the medical condition of his son, rendering him unable to understand and competently waive his *Miranda* rights. *See* [Doc. 261, at 2]. The Court finds this argument to be without merit. Defendant does not dispute that he was verbally advised of his *Miranda* rights and signed a form indicating his understanding of these rights and his desire to waive them. Moreover, Agent Bulla went over with Defendant the charges that had been brought against him. Although Defendant did mention to Agent Bulla his son's recent release from the hospital, which had occurred approximately a week before the date of the interview, he also advised Agent Bulla that his son was going to be okay and did not demonstrate any outward signs of being overly distraught or emotional. Agent Bulla stated that at most Defendant might have had a tear run down his check when describing the situation with his son. Further, Defendant was able to provide coherent answers to the questions posed to him and did not express any confusion. Agent Bulla had no reason to suspect that Defendant did not understand

his rights or that he was unable to competently waive those rights. Further, Defendant's interrogation lasted approximately one hour and was not unduly prolonged in a manner that would indicate the questioning itself was coercive. As such, the Court finds Defendant knowingly, voluntarily, and intelligently waived his *Miranda* rights.

## IV. CONCLUSION

For the reasons outlined above, the undersigned **RECOMMENDS** that Defendant's Motion to Suppress [Doc. 261] his statement to law enforcement be **DENIED**.[5]

Respectfully Submitted,

/s Cynthia Richardson Wyrick
United States Magistrate Judge

---

[5] Any objections to this report and recommendation must be served and filed within **fourteen (14) days** after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); *see United States v. Branch*, 537 F.3d 582 (6th. Cir. 2008); *see also Thomas v. Arn*, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the time period waives the right to appeal the District Court's order). The District Court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive, or general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).